IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Criminal Action No. 07-cr-00520-REB

UNITED STATES OF AMERICA,

    Plaintiff,

v.

MARK WILLIAM FISCHER,

    Defendant.

---

## PLEA AGREEMENT AND STATEMENT OF FACTS RELEVANT TO SENTENCING

    The United States of America (the government), by and through James R. Allison, Assistant United States Attorney for the District of Colorado, and the Defendant, Mark William Fischer, personally and by counsel, Michael Axt, submit the following Plea Agreement and Statement of Facts Relevant to Sentencing pursuant to D.C.COLO.LCrR 11.1.

### I. PLEA AGREEMENT

    The Defendant agrees to waive presentment of this case to the Grand Jury and to consent to the filing of an Amended Information, charging in one count a violation of Title 18, United States Code, Section 505, forging or counterfeiting the signature of a judge or court officer.

    The Defendant agrees to plead guilty to Count 1 of the Amended Information.

    The government agrees to recommend that the Defendant receive the downward adjustment of the Advisory Guideline Range for his acceptance of responsibility. This recommendation is made pursuant to Fed. R. Crim. P. 11(c)(1)(B).



## II. ELEMENTS OF THE OFFENSE

The elements of 18 U.S.C. § 505 are:

(1) The Defendant, in the States and District of Colorado,

(2) knowingly forged the signature of a judge or other officer of any court of the United States,

(3) for the purpose of authenticating any proceeding or document.

## III. STATUTORY PENALTIES

The maximum statutory penalty for a violation of 18 U.S.C. § 505 is: not more than 60 months imprisonment; not more than $250,000 fine, or both; not more than 3 years supervised release; $100 special assessment fee.

The conviction may cause the loss of civil rights, including but not limited to the rights to possess firearms, vote, hold elected office, sit on a jury, and to practice law.

A violation of the conditions of probation or supervised release may result in a separate prison sentence.

## IV. STIPULATION OF FACTUAL BASIS AND FACTS RELEVANT TO SENTENCING

The parties agree that there is no dispute as to the material elements which establish a factual basis of the offense of conviction.

Pertinent facts are set out below in order to provide a factual basis for the plea and to provide facts which the parties believe are relevant, pursuant to § 1B1.3, for computing the appropriate advisory guideline range. To the extent the parties disagree about the facts relevant

to sentencing, the statement of facts identifies which facts are known to be in dispute at the time of the plea. (§ 6B1.4(b))

The statement of facts herein does not preclude either party from presenting and arguing, for sentencing purposes, additional facts or factors not included herein which are relevant to the guideline computation (§ 1B1.3) or to sentencing in general (§ 1B1.4). In "determining the factual basis for the sentence, the court will consider the stipulation [of the parties], together with the results of the presentence investigation, and any other relevant information." (§ 6B1.4 Comm.)

The parties agree that the government's evidence would show that the date on which conduct relevant to the offense (§ 1B1.3) began was on or about March of 2005.

The parties agree that the government's evidence would be:

The Defendant, Mark William Fischer, is an attorney who was licensed to practice law during the relevant dates in this case. The Defendant was the attorney of record for Judy Heumann, a defendant in a civil case filed in the United States District Court for the District of Colorado, captioned: Civil Action No. 00-F-731 (OES), Harvey Barnett, Inc., a Florida Corporation, and Infant Swimming Research, Inc., a Florida Corporation, Plaintiff v. Ann Shidler, individually and d/b/a Infant Aquatic Survival, Judy Heumann, individually and d/b/a Infant Aquatic Survival, and Allison Geerdes, individually and d/b/a Infant Aquatic Survival, Defendants.

This case was assigned to the Honorable Phillip S. Figa, United States District Court Judge.

After a jury trial in this civil action, a jury returned a verdict against Judy Heumann, awarding monetary damages to the Plaintiff.

In March or April of 2005, Judy Heumann, the Defendant in the civil action, learned that the Plaintiff had placed a lien on real estate owned by Ms. Heumann and her husband to secure the judgment. Ms. Heumann was concerned at that time that the lien would have to be satisfied before she and her husband could successfully obtain permanent financing for this piece of real estate, which at the time was under construction.

Upon learning of the lien, Ms. Heumann contacted the Defendant, her attorney. The Defendant advised Ms. Heumann that upon posting a $90,000 bond with the court to secure the judgment, the court would order the release of the lien. The Defendant advised Ms. Heumann that he would obtain an order permitting the posting of a supercedeas bond. Sometime after March 28, 2005, the Defendant gave Ms. Heumann a document bearing the civil case caption, titled "Order Setting Supercedeas Bond". The document, as indicated by its title, puported to permit Ms. Heumann to post a $90,000.00 supercedeas bond with the Court. The document appeared to bear the signature of the Honorable Phillip S. Figa, United States District Court Judge. Ms. Heumann wrote a check in the amount of $90,000 and delivered the same to the Defendant at his law firm. It was her belief at that time, based upon the representation of the Defendant that the $90,000 would be posted with the court as a bond to cause the release of the lien upon her property.

After Judy Heumann had provided the $90,000 check to the Defendant, the Defendant gave her a document bearing the caption of the civil action that Ms. Heumann was involved in, bearing the title "CERTIFICATE OF STAY OF JUDGMENT RELEASE OF JUDGMENT

4

LIEN". The Defendant represented to Ms. Heumann that this document should be filed to cause the release of the lien filed upon her property by the Plaintiff. As instructed by the Defendant, Ms. Heumann caused the Certificate of Stay of Judgment Release of Judgment Lien to be filed with the Clerk and Recorder in Boulder County, Colorado, the location of the real estate at issue. The Certificate of Stay of Judgment Release of Judgment Lien was filed with the Boulder County Clerk and Recorder on or about April 26, 2005. The filing of this document had the effect of releasing the lien sufficiently to allow the Heumanns to obtain permanent financing on the home.

In March of 2007, the attorney for the Plaintiff in the civil action learned that the Certificate of Stay of Judgment Release of Judgment Lien had been filed in the Clerk and Recorder's Office. Suspecting that this document was fraudulent, the Plaintiff's attorney brought the matter to the attention of the United States District Court and the staff of the Honorable Phillip S. Figa.

A copy of the Certificate of Stay of Judgment Release of Judgment Lien was provided to the law clerk for the Honorable Phillip S. Figa. The document was also reviewed by Stephen P. Ehrlich, Chief Deputy Clerk, United States District Court, District of Colorado. The Certificate of Stay of Judgment Release of Judgment Lien appeared to bear the signatures of both Stephen P. Ehrlich in his capacity as Chief Deputy Clerk and that of Phillip S. Figa, United States District Court Judge. Upon review of the court file, it was determined that the document had never been filed with the United States District Court for the District of Colorado. It was further observed that the purported signatures of Stephen P. Ehrlich and the Honorable Phillip S. Figa were forgeries.

(Rev. 01/01/08)

The document captioned "Order Setting Supercedeas Bond" given to Ms. Heumann by the Defendant was also determined to be fraudulent. No such order was ever entered and the signature of Judge Figa was a forgery.

The law firm for which the Defendant worked provided bank records of its trust account. Records of the firm's trust account show that the $90,000 given to the Defendant by Judy Heumann was deposited in the trust account of the law firm. The records also show that these funds were not used to post a bond with the court. Approximately $38,000 was applied to unpaid legal fees and expenses that had accrued from the representation of the defendant in the civil action. During 2006 and 2007, there were withdrawals from the trust account and other deposits for fees by Ms. Heumann. In April of 2007, after the firm learned of the forgery, the trust account's balance was replenished by the firm to the amount of $90,000. There is no indication that the Defendant converted any of the funds from Judy Heumann.

In April of 2007, after the plaintiff's attorney in the civil action had learned of the filing of the false document with the clerk and recorder in Boulder, Colorado, the Defendant admitted to his legal assistant at the law firm that he had prepared a fraudulent document.

In a letter dated April 9, 2007 to the Honorable Michael E. Hegarty, United States Magistrate Judge for the United District Court for the District of Colorado, the Defendant admitted to the court that he had fabricated a false document which purported to be an order staying execution of any judgment liens in the civil case.

## V. SENTENCING COMPUTATION

The parties understand that the court may impose any sentence, up to the statutory maximum, regardless of any advisory guideline range computed, and that the court is not bound

6

(Rev. 01/01/08)

by any position of the parties. (§ 6B1.4(d))  The court is free, pursuant to §§ 6A1.3 and 6B1.4, to reach its own findings of facts and sentencing factors considering the parties' stipulations, the presentence investigation, and any other relevant information. (§ 6B1.4 Comm.; § 1B1.4)

To the extent the parties disagree about the sentencing factors, the computations below identify the factors which are in dispute. (§ 6B1.4(b))

    A.    The base guideline is § 2J1.2, with a base offense level of 14.

    B.    There is a 2 level increase in the base offense level for "abuse of position of trust or use of a special skill" §3B1.3

    C.    There are no victim-related, role-in-offense obstruction and/or multiple count adjustments.

    D.    The adjusted offense level would therefore be 16.

    E.    The Defendant should receive the adjustment for acceptance of responsibility. The resulting offense level would therefore be 13.

    F.    The parties understand that the Defendant's criminal history computation is tentative. The criminal history category is determined by the court. Known facts regarding the criminal history are as follows: The Defendant is believed to fall within Category I.

    G.    Assuming the (tentative) criminal history facts of F. above, the career offender/criminal livelihood/armed career criminal adjustments would not apply.

    H.    The advisory guideline range resulting from the estimated offense level(s) of E. above, and the (tentative) criminal history category of F. above, is 12-18 months. However, in order to be as accurate as possible, with the criminal history category undetermined at this time, the estimated offense level(s) of [E. or G.] above could conceivably result in a range from 12

7

(Rev. 01/01/08)

months (bottom of Category I), to 41 months (top of Category VI). The sentence would be limited, in any case, by the statutory maximum.

I.  Pursuant to guideline § 5E1.2, assuming the estimated offense level of [ E. or G.] above, the fine range for this offense would be $ 3,000 to $ 30,000, plus applicable interest and penalties.

J.  Pursuant to guideline § 5D1.2, if the court imposes the term of supervised release, that term shall be at least 2 years, but not more than 3 years.

## VI. WHY THE PROPOSED PLEA DISPOSITION IS APPROPRIATE

The parties believe the sentencing range resulting from the proposed plea agreement is appropriate because all relevant conduct is disclosed, the advisory sentencing guidelines take into account all pertinent sentencing factors with respect to this Defendant, and the charges to which the Defendant has agreed to plead guilty adequately reflect the seriousness of the actual offense behavior.

This document states the parties' entire agreement. There are no other promises, agreements (or "side agreements"), terms, conditions, understandings, or assurances, express or implied. In entering this agreement, neither the government nor the Defendant has relied, or is relying, on any terms, promises, conditions, or assurances not expressly stated in this agreement.

Date: 2/14/08

Mark William Fischer
Defendant

Date: 2/14/08

Michael Axt
Attorney for Defendant

Date: 2-15-08

James R. Allison
Assistant U.S. Attorney

8

(Rev. 01/01/08)